Good morning. May it please the court, my name is Amelia Pizarro. I represent the development petition for Curtis Sunrhodes, and I'd like to please reserve two minutes for rebuttal. All right. You'll have to watch the clock, because we won't. Well, no, sir. Okay. I'll try to help you, honestly. Thank you. There's no dispute in this case that Mr. Sunrhodes filed his petition five days late. The question is... Good answer, Your Honor. The question... So the next question is, if it's untimely, why didn't you argue equitable tolling to the district court? Mr. Sunrhodes represented himself. My appointment began... I understand, but why didn't your client, then? He did raise it in a post-judgment motion, and he did it in the best way that he knew how. Both before and after the state's motion to dismiss, he sought the appointment of counsel, and I think it's worth pointing out that in the first motion to dismiss, the warden never raised timeliness. Well, but just a minute. The warden was filing motions to dismiss because you're a good lawyer, you know. That's motions to dismiss, not pleadings. All they are is motions to get rid of the case. We put, if you will, affirmative defenses or whatever we might have in our pleadings, but if we never plead, then we don't need to plead them. We can plead a lot of things on the motion to dismiss. So, I'm having a tough time, again, understanding how I can think that you ever brought this up, or that your client did. Well, in the first motion to dismiss, timeliness is what's been mentioned. Well, it didn't need to be, as we just talked. But I think it is an affirmative defense that it's on the warden's case. Well, but you don't need to mention affirmative defenses in motions to dismiss. In the very least... You're in a civil case, right? Yes. And in a civil case, you have certain things you have to do in the dismiss, and then there's affirmative defenses that you put in your answer, but the warden wasn't answering. He was moving to dismiss. But he also affirmatively said in that motion that the motion was timely. True. So, that's something that my pro se, uneducated client relied on when later he tried to fix his pleading, and then was the subject of another motion to dismiss. When he was defending against you... is enough that he doesn't have to do what he needs to do on time. No, I think the question is whether or not my pro se client here was at least a little bit... Well, I understand you have a pro se client, so I tried to look at the exceptional circumstances that might help your pro se client. And I guess the first one that you argue is they refused to appoint an attorney. But if I look at Robinson, which is our case, 588 and 3rd, proceeding pro se is typical in bringing these claims, and you don't need an attorney. Then I looked about... He didn't know about equitable tolling, which is another thing you argued. And again, in Robinson, it says proceeding pro se is fine, and the fact that you don't have the knowledge, that's not an exceptional circumstance. So, the only other exceptional circumstance that you've alleged is that the government responded, the petition was timely filed, it's the first motion to dismiss, and we've talked about that. So, now I'm trying to figure out what do I do. At the very least, we get a remand to the district court to develop equitable tolling, because he did raise it in the district court at the very least in a close judgment motion. But the court didn't give him the opportunity to develop that claim. It basically said, well, even if everything that you say is true, that your attorney, on the back end, delayed 17 days to notify you about the decision, you still had a month and a half left. Go ahead. That, to me, is an interesting issue. He had a month and a half left. So, is that enough to hold him to say that he has to file, I gather that's the other side's theory, what is the authority that says that he can still rely on equitable tolling? I think the authority is to tell them that equitable tolling claim is particularly fact specific. In here, we don't know anything that happened during that month and a half that he had remaining. And in order to know if there is anything that would warrant tolling, we need to have a hearing. We don't know whether that question is a legal issue or a factual issue, because he still lost a lot of time. But what do we have for authority that says that unless there is something that happened in that time, he's stuck with time loss? Well, I think the court's decision about, off the top of my head, I've been using my cases where it was about in Gibbs where the attorney never received the file. In here, in the letter that I submitted, it was part of the reply brief to expand the record. And I know that my client asked for the file. What I don't know is if he ever received it. I don't know what kind of access he had to the law library or what kind of communication he was having with his attorney. All of those things are factual questions that we don't have answers to on this record that I think need to be developed before truly answering the question of whether or not he's entitled to tolling. So I guess you're agreeing that if he had 68 days and if there was nothing extraordinary within that time that he's stuck with. I certainly understand the law to me that there has to be a causal connection between the two. And I think that there are some unanswered questions here that sort of create coverage for us. And, you know, the time that he remained in, in that 40-odd days, I think really what happened in that time is critical. And we just don't know the answer to that question. And I think that's why a remand is necessary. Separate from the back-end time, we're also seeking 300 days on the front-end, the time between when his conviction was finalized and when his attorney filed the post-conviction petition. And we have three different sort of supporting theories on why he's entitled to those 300 days, that his post-conviction attorney had an actual conflict of interest, how he represented him at trial and on direct appeal, that she couldn't represent him on post-conviction, had an ethical duty to tell him as much when the direct appeal was finalized. It's a little difficult for you to be arguing about her ethical problems when she's the one who filed the state petition on time, right? Agreed she did file it. Agreed she gave him every benefit of the doubt on the state petition. Thank you. Even if she were unethical, she did everything she could to help him. I don't know that I can agree with that, Your Honor, because the purpose of the post-conviction petition is to evaluate things outside of her record. I'll understand that. But if we're looking at equitable tolling, the fact that she filed the state petition gave him some extra time, and the fact that she filed it on time made sure that somebody had to look at it from the state, right? I certainly told the deadline and it was filed on time. I don't dispute that. And they got him another 300 days? Again, that time was critical time that should have been used to look for things outside of the record, and it simply wasn't. At the post-conviction, I'm sure you're hearing one thing that Pantone talks a lot about, was learning a child that the child had gone to counseling, and, man, it would have been nice to have those records. Well, that seems like something that really should have been pursued on post-conviction rather than filing a petition on the last possible day with only record-based claims that were apparent 300 days earlier. But here we have pretty hard case law that says negligence is not enough to undo equitable tolling. And looking at this record, which we have in front of us, there's nothing to suggest more than mere negligence on anybody's part. I think at the very least, at the back end, it's more than mere negligence, particularly because the client asked for his file and never received it. Well, that's outside of pardon variety. And I'm sorry to interrupt. I think that leading up to that, again, this is an attorney who was besieged by sanctions orders from both the federal court and the state court, and she was trying to keep her practice afloat. Meanwhile, her client had no idea any of that was going on to make his own choice about hiring a different attorney or representing himself. I think there are no further questions. I would like to reserve the remainder of my time. I just want to ask whether that's CDC seeking to challenge the competency of this attorney. I think that's a, yeah, I think that there would be some claims. I don't think there would be a specific, you know, ineffective assistance of post-conviction counsel claim or anything like that. But certainly I think there are the post-conviction evidentiary hearing raised issues in my mind that need to be investigated further to know if there are claims, in addition to the claims that were preserved already. What about through trial counsel? Yes, I think there would be claims there. However, the problem comes in that he still had extra time with new counsel. He got extra time after he was told what to do with new counsel, and we don't have that he did anything. Isn't that the bottom line? And all you're saying is I need to send it back to the district court so I can have a do-over? Well, not a do-over, a do the first time. I mean, there was a first time. Evidence could have been submitted then. But he didn't know how to do that. Well, I understand. So, again, we're back to the point where he need not have a counsel. Proceeding pro se is normal. He need not have been appointed counsel in this proceeding. But now you're saying because he should have been, even though he need not, we should have a do-over. I'm saying because he raised that quotable tolling in enough time, you should have been given an opportunity to develop it and give more time to it. Thank you, Your Honor. And he didn't have a lot of time. He didn't have a lot of time. Thank you. Good morning. And may it please the Court, Amanda Sage, Deputy Attorney General with the Nevada Attorney General's Office, representing the respondent of Kelly's in this matter. And I do think that this case boils down to two important points. The first is that Mr. Sunrose not only waived the equitable tolling argument, but knowingly waived the equitable tolling argument. The arguments come forward in the reply that he didn't know equitable tolling was available to him until the district court issued its order discussing equitable tolling for the first time. However, if you look at some of the motions that he filed prior to opposing the state's motion to dismiss his petitions unkindly, he talks about tolling and equitable remedies that are available to him. I believe it's on 423 of the record. He tells the court, I know that tolling might be available and there are equitable remedies that this court could put forward that would make it safe to terminate his petition. But instead of offering those, it attempts to do so after the government moved to dismiss him. That was after the government moved to dismiss him before he filed his petition. The first petition is correct. This was after the second motion to dismiss erased to terminate his claim. But before he ever closed that motion, so he filed a motion for counsel and he talked about tolling and equitable remedies. And then in his opposition, just ignore what that says. Help me with it. There are all these motions. Yes. So just help us with the chronology here. He files his petition. Government moves to dismiss. Correct? On grounds of, I believe on grounds of exhaustion. He says that his petition is timely in the court at some point. So the government moves to dismiss on grounds of exhaustion. And instead of opposing that first motion to dismiss, he moves for Lee to file a second or an amended petition. Correct. And then once that amended petition was accepted, the government moved to dismiss again. It's time-raising timeliness. There's also issues now of procedural default. So there's some other claims that were never reached because of the timeliness. He should be dispositive. After that motion to dismiss is filed, he moves for counsel, and that motion for counsel talks about tolling and equitable remedies that he'd like counsel to help him with. Three weeks later, he files his opposition to the motion to dismiss and completely ignores those equitable remedies. He dismisses instead that his petition is timely, just takes a contrary position, rather than trying to use some of those defenses that may have been available to him. And so I don't think this is a case. What was his request for counsel tonight? I'm not sure, actually, the date that the actual request for counsel was tonight. I didn't look at it. I forgot it. What was it before the last filing? What are you talking about? It looks like it was actually tonight, just a few days after being filed, and so fairly quickly. My record says it's almost immediately after the request for counsel. Yeah, I think he asked for counsel on the 18th. This was the order tonight. It was filed on August 19th. And then approximately three weeks later, he files his actual opposition, where he makes a knowingly or headache over a toying claim. So to say he didn't know that this was available to him, I don't think is supported by his own filings in the record. And he chose to instead argue that his petition was, repeatedly argue that his petition was actually timely. And I think that links us into the other important issue in this case, which is that even if we get to his equitable toying arguments, assuming that they're not waived from below, he simply can't show a causal connection between the extraordinary circumstances that he's raising and why his petition is waived. His petition was waived because he miscalculated his timeliness in the remaining time in his statute of limitations. And we know that because he argued that his petition was timely. He was not waived because of his attorney's actions. And that's, he, you know, really distinguishes this case from other cases in this circuit. As your attorney pointed out, he still had 65 days remaining on his clock when remitted or issued, and even 48 days once he received notice that this case was finalized. And 65 days once the remitter was issued. Correct. And 48 days once his lawyer told him the remitter was issued. That's correct. So he still had 48 days to do something when he knew very well that everything was done and he had to get on the ball. Yes. Lawyers know how much time he had. I know the lawyer just said you're free to pursue remedies, but even if the lawyer had told him how much time he had, it would say he miscalculates the time. Exactly. And even if his lawyer had given him a deadline and miscalculated, it's from courts at NASCAR and a variety of negligence, he wouldn't have been able to rely on that as a basis for equitable tolling. But that's really what distinguishes this case from other cases in this circuit. If you look at cases like Gibbs and Few and Luna, all of those cases, those extraordinary circumstances took that petitioner beyond their deadline. Their deadline file expired during that extraordinary circumstance. So the question became, did they show diligence through the time that they actually filed their petition? Here he had at least 48, knowingly had 48 days to debate the record of what he was doing in that 48-day period. What needs going on? We don't. It is the petitioner's burden to show he's entitled to equitable tolling and there's simply nothing in the record to show what diligence he was exercising during that 48-day time period. And without showing that diligence through filing. And I think that's something that needs to be distinguished a lot, is what we talked about in the opening brief, is the stop the clock, and that there's 300 days here that they're asking for and 17 days on the back end that they're asking for. And the way that they're applying it is under a pure stop the clock approach, that if we toll these high periods, he gets this time added on. It never came to be timely, but that's not how this circuit applies equitable tolling. Winning the circuit uses a combined approach of stop the clock, but also that you have to show diligence through filing, and there's simply no evidence of any diligence during that 48-day time period. And we're not even talking about a petitioner that filed well beyond just deadline. He only filed five days late, and so he simply hasn't shown any reason that he couldn't have gotten that petition in five days earlier, other than his own inability to calculate that deadline that was available to him. And because he fails to show diligence through filing, he fails to show an extraordinary circumstance that actually caused his untimely filing. I think remand in this matter would be futile. I don't think that there's just any showing here that he would be entitled to what is supposed to be a very rare remedy in equitable tolling. If the court doesn't have any further questions, I'm going to submit it off the briefing to ask that you affirm the district court. Thank you. No questions. Thank you. Thank you. Thank you. You had a minute left, I think, counselor. Thank you, your honor. When Mr. Sundquist was litigating this case to me, it was apparent that he was trying to comply with the rules in the first motion to dismiss that said it's an exhaustive. He said, okay, let me change it. I'll only include exhaustive claims. And he found an amended petition with the pages, literally from the briefs that had been filed in an effort to show exhaustion. And so when equitable toying is raised for the first time, it's by the court when it denies the petition is untimely, and he tries to show that no, there is reason for equitable toying. The court dismissed that, saying that there's just no viable ground for it, but there was because this court has issued a decision about it. What do you do with counselor's argument that he said a lot of stuff in his first reply in talking about wanting to counsel, but when he really got to replying, he didn't say anything more about it? I just think that he didn't know how. He didn't know how, even though he'd done it before? He hadn't done it before in the original motion to dismiss, and I think there's a difference of interpretation about what he was trying to say in that motion for counsel. Certainly he was saying that he needs help, and he was saying that he recognized that there is a twangliness argument, and whether or not he can overcome it. But I think using the word equitable, it doesn't mean he was talking about equitable toying. We got your argument. Give us your best case that does what you want us to do in this matter. My best case is on remand. We can show that he's- No, no. I realize you want a remand. What's your best authority for doing what you want us to do? We can. We're right in this room. We just cite this case and we're done. I think Gibbs is the best. I know. Gibbs College. Thank you. Thank you very much. Appreciate your argument, both of you. Appreciate you coming and presenting argument to us. Case 1615062 is submitted.
judges: Schroeder, N.R. Smith, Battaglia